UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

98-0103CR-MIDDLEBROOKS

UNITED STATES OF AMERICA )   CASE NO. _____
                        )
v.                      )   18 U.S.C. § 1001
                        )
ROYAL CARIBBEAN CRUISES, LTD., )   MAGISTRATE JUDGE
a/k/a " Royal Caribbean )   INDICTMENT   TURNOFF
     International ",   )
                        )
_____Defendant._____)

The Grand Jury charges that:

### Count I
### [False Statements]

#### Introduction

At all times relevant to this Indictment:

1. Defendant ROYAL CARIBBEAN CRUISES, LTD. ("RCCL"), also known as Royal Caribbean International, was a Liberian corporation doing business in the United States and with its corporate headquarters in Miami, Florida. RCCL was originally founded in 1967 for the purpose of operating cruise ships in the Caribbean while using United States ports. RCCL operated and controlled a fleet of cruise ships, including the Nordic Empress cruise ship.

2. The Nordic Empress was a cruise ship of approximately 48,563 gross tons, which was approximately 623 feet long and capable of carrying 1,600 passengers and 671 crew members. The Nordic Empress was registered in Liberia and operated from the home port of Miami, Florida, where it typically sailed from and returned to Miami, Florida on a weekly basis on voyages to the Caribbean.

3. The <u>Nordic Empress</u> had an Engine Department headed by a Chief Engineer, Staff Engineer (also known as the Chief Engineer, Jr.), and First Engineer. There were usually at least three Second Engineers who were each responsible for serving as Duty Engineer during two four-hour shifts each day in the engine room. At least one of the Second Engineer's was assigned responsibility for the Oil Water Separator, a required pollution prevention device.

4. Large vessels like the <u>Nordic Empress</u> produce waste oil as a result of the operation of machinery in the engine room. Some of this waste oil, along with water and other liquids, accumulates in the bottom or "bilges" of the vessel. Typically, this waste liquid drains into the "bilge wells," compartments set into the bottom of the bilges. The bilge waste is then collected and run through various processes designed to separate the oil from the water. These processes include settling tanks and an Oil Water Separator, a pollution prevention machine designed to remove or separate out oil. An Oil Water Separator requires maintenance and parts on a regular basis. The oil removed from the bilge waste, along with other waste oils from the ship, is stored in a sludge tank for later burning as fuel for the boilers or for unloading while the vessel is in port so that it may be properly disposed of on shore. The <u>Nordic Empress</u> was also fitted with an installed by-pass pipe, which allowed the discharge of bilge waste by RCCL employees without first processing the bilge waste through the Oil Water Separator.

5. Large vessels such as the <u>Nordic Empress</u> are required to maintain an Oil Record Book in which transfers and discharges of oil are to be recorded. 33 C.F.R. § 151.25(d). The Captain (also known as the "Master") of the ship was required to sign every completed page of the Oil Record Book. 33 C.F.R. § 151.25(h).

6. The United States Coast Guard was charged with enforcing United States law and was

empowered to board vessels and conduct investigations of potential violations. 14 U.S.C. § 89. Vessels such as the Nordic Empress were routinely inspected on a quarterly basis by the United States Coast Guard and on other occasions such as pollution investigations. In conducting inspections and pollution investigations, United States Coast Guard personnel relied upon a ship's documents, including Oil Record Books, and statements of the crew.

7. In the early hours of February 1, 1993, the United States Coast Guard was conducting a patrol operation off the coast of South Florida. During the operation, United States Coast Guard personnel in a specially equipped United States Coast Guard aircraft observed, and using Forward Looking Infra-red Radar ("FLIR") filmed, the Nordic Empress in the act of discharging pollutants into the ocean. Later that day, after the Nordic Empress cruise ship reached Miami, Florida, the United States Coast Guard conducted a pollution investigation in port. During the course of the investigation, the United States Coast Guard was presented with RCCL documents, including the vessel's Oil Record Book, and interviewed crew members. The Oil Record Book contained entries indicating overboard discharges through the Oil Water Separator on previous dates, but no entry for any discharge on February 1, 1993.

8. On or about February 1, 1993, in the port of Miami, within the Southern District of Florida, the defendant,

**ROYAL CARIBBEAN CRUISES, LTD,**

knowingly and willfully used a false writing, in a matter within the jurisdiction of the United States Coast Guard, knowing the same to contain materially false, fictitious and fraudulent entries, to wit, an Oil Record Book for the Nordic Empress, that falsely represented that all overboard discharges of oil contaminated bilge waste occured only after treatment of the bilge waste through

15 parts per million equipment, that is, the Oil Water Separator, and which failed to record the overboard discharge of oil contaminated bilge waste without the use of the Oil Water Separator.

All in violation of Title 18, United States Code, Section 1001.

**A TRUE BILL**

_____
FOREPERSON

_____
THOMAS E. SCOTT
UNITED STATES ATTORNEY

_____
THOMAS A. WATTS-FITZGERALD
ASSISTANT U. S. ATTORNEY

_____
RICHARD A. UDELL
TRIAL ATTORNEY
Environmental Crimes Section
U.S. Department of Justice

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

98-0103CR-MIDDLEBROOKS

v.

ROYAL CARIBBEAN CRUISES, LTD

**CERTIFICATE OF TRIAL ATTORNEY** MAGISTRATE JUDGE
TURNOFF

Related Case Information:
SUPERSEDING                Yes ___   No _X_
New Defendant(s)           Yes _X_   No ___
Number of New Defendants         1
Total number of counts           1

**Court Division**: (Select One)

_X_ Miami      ___ Key West
___ FTL        ___ WPB   ___ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:     (Yes or No) ____NO____
   List language and/or dialect _____

4. This case will take __1__ week for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                    (Check only one)

   I    0 to 5 days       _X_      Petty      ___
   II   6 to 10 days      ___      Minor      ___
   III  11 to 20 days     ___      Misdem.    ___
   IV   21 to 60 days     ___      Felony     _X_
   V    61 days and over  ___

6. Has this case been previously filed in this District Court? (Yes or No) __No__
If yes:
Judge: _____   Case No. _____
(Attach copy of dispositive order)

Has a complaint been filed in this matter? (Yes or No) __NO__
If yes:

Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____   District of _____

7. This case originated in the U.S. Attorney's office prior to August 16, 1985
   (Yes or No) ____NO____

_____
THOMAS WATTS-FITZGERALD
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 273538

*Penalty Sheet(s) attached

REV.12/12/96
A:\ROYAL.CER

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

98-0103-CR-MIDDLEBROOKS

Defendant's Name: ROYAL CARIBBEAN CRUISES, LTD   No.: _____

MAGISTRATE JUDGE
TURNOFF

Count #: 1
  18 USC 1001: False statements

*Max. Penalty: $500,000 fine or twice gain/loss.

Count #:

*Max. Penalty:
Count #:

*Max. Penalty:
Count #:

*Max. Penalty:
Count #:

*Max. Penalty:
Count #:

*Max. Penalty:
Count #:

*Max. Penalty:

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

REV. 12/12/96