**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 98-0103-CR-MIDDLEBROOKS**

**UNITED STATES OF AMERICA,**

**vs.**

**ROYAL CARIBBEAN CRUISES LTD.,**
**a/k/a "Royal Caribbean International,"**

**Defendant.**
_____/



FILED by _HEW_ D.C

MAY 1 2 1998

CARLOS JUENKE
CLERK U.S DIST CT.
S D OF FLA- MIAMI

## ORDER ON MOTION TO DISMISS

This Cause comes before the Court on Defendant's Motion to Dismiss, filed on March 25, 1998. The Court has reviewed the pertinent portions of the record and is otherwise fully advised in the premises. Defendant requested oral argument in this matter so that testimony from international law experts regarding the issues in this case could be fully developed on the record. We granted Defendant's request, and heard oral argument in this matter on April 22, 1998, and April 23, 1998.

### Introduction

The Defendant, Royal Caribbean Cruises, Ltd., is accused in this case with the knowing use or presentation of a false writing, specifically an Oil Record Book for the cruise ship the <u>Nordic Empress</u>, during a United States Coast Guard inspection on February 1, 1993. This conduct is alleged to be in violation of Title 18 of the United States Code, section 1001, also known as the "False Statements Act." For the purposes of the Motion to Dismiss, we consider the facts as alleged in the Indictment.



On February 1, 1993, at approximately 3:00 a.m., a Coast Guard aircraft on patrol observed, via Forward Looking Infra-red Radar, the Nordic Empress discharging oil from the vessel. This discharge occurred in Bahamian waters, en route to the United States and the destination port of Miami, Florida. Upon its arrival into Miami, the Coast Guard conducted a document and safety inspection. During its review of the Oil Record Book, the Coast Guard observed that there was no entry indicating an overboard discharge of oil on February 1, 1993. Based upon the suspicion that an alleged discharge violation had occurred, the United States referred this matter to a representative of the government of Liberia via the Department of State. The referral letter addressed an "alleged discharge violation" but referred the Coast Guard Report in its entirety, including the reference to potential violations of the Oil Record Book, to Liberia. On February 10, 1994, Liberia filed its Determination that there was reasonable doubt that the Nordic Empress was in contravention of MARPOL and that it was "difficult" to respond to the allegations of "improperly recorded" Oil Record Book entries under the facts as presented, and recommended expunging the allegation. There was no appeal for reconsideration or review made to the International Maritime Organization pursuant to the protocol set forth in MARPOL.

The indictment in this case was returned on February 19, 1998. The Indictment charges a violation of 18 U.S.C. §1001. In pertinent part, it charges that:

> On or about February 1, 1993, in the port of Miami, within the Southern District of Florida , the defendant Royal Caribbean Cruises Ltd knowingly and wilfully used a false writing, in a matter within the jurisdiction of the United States Coast Guard, knowing the same to contain materially false, fictitious and fraudulent entries, to wit, an Oil Record Book for the Nordic Empress, that falsely represented that all overboard discharges of oil contaminated bilge waste occurred only after treatment of the bilge waste through 15 parts per million equipment, that is, the Oil Water Separator, and which failed to record the overboard discharge of oil contaminated bilge waste without the use of the Oil Water Separator. (Indictment, ¶8).

The instant Motion to Dismiss by RCCL was filed on March 25, 1998, based on both domestic and international law principles.

RCCL contends that prosecution of this matter is barred under domestic law for three

reasons. First, Defendant argues that there cannot be a §1001 False Statement Act prosecution for alleged omission of a record of a discharge occurring beyond the navigable waters of the United States. RCCL argues that the alleged false statement attending the oil discharge, made in Bahamian waters, was not within the jurisdiction of the Coast Guard; as a result, the necessary predicate for a §1001 claim, a false statement over which there is jurisdiction, cannot be established. Second, Defendant contends that the penalty provisions of the Act to Prevent Pollution from Ships ("APPS"), codified at 33 U.S.C. §1901 *et seq*, and the implementing regulations thereof, *see* 33 C.F.R. §§151.09(a)(5), 151.25, preclude prosecution under §1001. Third, the Defendant contends that the principles of lenity, under which any ambiguities in the scope of penal provisions are resolved against the government, as well as fundamental concepts of due process and notice, should be applied to preclude this prosecution.

RCCL's Motion to Dismiss based upon international law is based upon the contention that prosecution is precluded by binding provisions of international law under both MARPOL (the Protocol of 1978 Relating to the International Convention for the Prevention of Pollution from Ships, 1973) and UNCLOS (the Law of the Sea Convention of 1982). Defendant first argues that the relevant provisions of MARPOL require dismissal of this case, as domestic prosecution of the alleged fabrication of the Oil Record Book is properly addressed via an international regime mandating referral to the flag state, Liberia  Second, Defendant argues that this action violates UNCLOS. Defendant contends that UNCLOS applies to this action, either as a matter of collateral estoppel or customary international law, and that at least three provisions of UNCLOS are implicated by this prosecution: the international equivalent of a prohibition on double jeopardy contained within Article 228.1; the Article 228.2 three-year statute of limitations on proceedings to impose penalties on foreign vessels, and Article 218.2, which prohibits institution of proceedings with respect to a "discharge violation" unless requested by the flag state or a state damaged or threatened by the discharge. Finally, Defendant states that as a matter of policy, this prosecution is inconsistent with the principles of the Law of the Sea Convention, particularly with respect to the carefully negotiated allocation of jurisdiction, and allowing this case to proceed to trial would upset the international balance of the Convention. We will address each of these arguments in turn.

**Analysis**

**I. Domestic Law and Applicability of 18 U.S.C. §1001**

Defendant's first contention is that the alleged false statement cannot be prosecuted under 18 U.S.C. §1001 as there is no jurisdiction. A conviction for a violation of §1001 requires, *inter alia*, that the statement is "within the jurisdiction of an agency of the United States." *U S. v Calhoon*, 97 F.3d 518, 523 (11th Cir 1996), *citing U S v Lawson*, 809 F.2d 1514, 1517 (11th Cir. 1987). In this case, the relevant agency is the Coast Guard. Defendant argues that because there is no U.S. authority to regulate the conduct at issue here, namely discharges occurring outside the navigable waters of the United States, the Oil Record Book and its entries– or lack thereof– are not within the jurisdiction of the United States, much less the Coast Guard.

Defendant also asserts that the absence of a legal duty to make entries in the Oil Record Book mandates dismissal as there can be no prosecution under §1001 for false statement by omission or concealment when no such disclosure is required. RCCL points out that the only domestic statute requiring entries in Oil Record Book relating to discharges of oil is found in APPS. Under MARPOL, codified in U.S. law as APPS, RCCL argues that the duty to make entries regarding discharges of oil occurs at the time of the discharge, and the discharge in this case occurred more than 3 miles offshore. *See* 33 U.S.C §1907(a), MARPOL Annex 1, Regulation 20(2). APPS allows the United States to regulate foreign-flagged vessels only while in the navigable waters of the United States. 33 U S C. §1902(a)(1). As a result, RCCL contends that the United States has no authority to regulate either the alleged February 1, 1993, unauthorized discharge from the Nordic Empress or any attendant Oil Record Book violations. Because the United States can impose no duty on RCCL to make any entry in the Nordic Empress' Oil Record Book with respect to the February 1, 1993, alleged discharge, it cannot prosecute RCCL for failure to comply with the putative duty in this case, the duty to make accurate Oil Record Book entries.

The government contends that the alleged violation is not discharging oil while at sea and failing to record the discharge at that time, it is the presentation of the materially false Oil Record Book to the United States Coast Guard while in port of Miami, Florida, which satisfies the §1001

requirement that the act be "within the jurisdiction" of an agency of the government. The criminal conduct at issue in this case, according to the government, encompasses failing to record the alleged oil discharge, affirmatively recording false information about pollution discharge, and presenting the falsely recorded Oil Book Record while in port. Accordingly, the government contends that jurisdiction exists under §1001, and that as the Coast Guard is authorized to enforce any violation of United States law, including §1001 and APPS pursuant to the provisions of 14 U.S.C. §89(a), this prosecution is appropriate.

We first start with the premise that jurisdiction based upon §1001 should not be unnecessarily confined. Indeed, the "United States Supreme Court has stated that jurisdiction within the meaning of section 1001 should not be narrowly or technically defined." *U S v Herring*, 916 F.2d 1543, 1547 (11th Cir. 1990), *citing U S. v Rodgers*, 466 U.S. 475, 480, 104 S.Ct. 1942, 1996 (1984). Further, Section 1001 is "necessarily couched in very broad terms to encompass the variety of deceptive practices which ingenious individuals might perpetrate upon an increasingly complex government." *U.S v Gafyczk*, 847 F.2d 685, 690 (11th Cir. 1988). In *Gafyczk*, the Eleventh Circuit held that jurisdiction under §1001 is satisfied when documents are "commonly utilized by the [U.S. Customs] Service in the performance of its regularly conducted activities. Accordingly, when the appellants submitted their [Shipper's Export Declarations] to the Customs Service, that was sufficient to render those acts 'matters within the jurisdiction of the U.S. Customs Service' as set forth in the §1001 counts and as required by statute." *Gafyczk*, 847 F.2d at 691.

Under the law as developed in the Eleventh Circuit, the fact that the alleged false statement in a §1001 case was not made within the jurisdictional bounds of the United States is not necessarily fatal to the claim. *See, e g , U.S v Cox*, 696 F.2d 1294 (11th Cir 1983) (upholding conviction for §1001 violation where relevant documents filled out in Guatemala). We note that even if the statement is arguably true at the time it was made in the location in which it was made, if the statement is false as a matter of United States law and fulfills the other requirements for a §1001 claim, it is actionable. *See U.S. v Godinez*, 922 F.2d 752 (11th Cir. 1991) (upholding convictions under §1001 for making false statements in connection with importation of goods where invoices describing shipments were filled out in Latin America and the alleged false

statement was contended to be a true statement in the exporting country) Rather, the correct analysis is to consider whether documents containing the alleged false statement are routinely or commonly used by United States officials during the course of their regularly conducted activities. If the documents are, and the *prima facie* requirements of the five elements of a §1001 claim are met-- a statement; falsity; materiality, specific intent; and agency jurisdiction-- then the statement is actionable under §1001 *U S. v Lawson*, 809 F.2d 1514, 1517 (11th Cir. 1987).

Under MARPOL as well as under various other treaties and laws not at issue in this matter, the United States, via the U.S. Coast Guard, has the duty and the obligation to board and inspect ships while in port and to pursue appropriate measures to address any violations thereof. *See, e.g.*, 33 U.S.C. §1907(c)(1) & (c)(2). Such actions are, indeed, part of the regularly conducted activities of the United States Coast Guard, and false statements made in connection with those activities seem to us to fall within the jurisdiction of §1001. The §1001 crime charged in the Indictment involves false statements of commission; that is, affirmative misrepresentations regarding the treatment of the overboard waste, as well as false statements of omission; that is, failing to indicate the discharge of the alleged waste. Whether or not the United States had the authority to regulate either the alleged February 1, 1993, unauthorized discharge from the <u>Nordic Empress</u> or any attendant Oil Record Book violations at that time does not bear upon our inquiry as to whether the United States has jurisdiction to enforce its laws in port in Miami, Florida regarding the commission of false statements made to a United States agency performing its regular and proper duties. We hold that it does. To find to the contrary would raise serious questions about the government's ability to enforce, as a matter of domestic law, false statements made in connection with such matters as bank fraud, immigration, and visa cases, where the false statements at issue were made outside of the United States, perhaps acceptable or in the alternative unnecessary under the appropriate foreign regulatory scheme, but nonetheless illegal under United States law. The Eleventh Circuit has developed the appropriate requirements for jurisdiction under §1001, and applying the facts in this case to the standards elucidated above, we find that jurisdiction under §1001 is appropriate

We also note that as an alternate basis for jurisdiction under §1001, the extraterritoriality doctrine providing jurisdiction over certain extraterritorial offenses whose "extraterritorial acts

-6-

are intended to have an effect within the sovereign territory" seems applicable to this case. *U S v Padilla-Martinez*, 762 F.2d 942, 950 (11th Cir 1985). *See also U.S. v Stuart-Caballero*, 686 F.2d 890, 891 (11th Cir. 1982) (*per curiam*) (rejecting argument that international law and due process precludes the extension of United States criminal narcotics laws to vessels on the high seas absent proof of intent to distribute the narcotics in the United States); *U.S v Williams*, 617 F.2d 1063, 1076 (5th Cir. 1980) (*en banc*) (holding that United States jurisdiction "embraces offenses having an effect within its sovereign territory, even though the acts constituting the offense occur outside the territory.") Certainly, deliberate use of false documents before the United States Coast Guard has an effect within the sovereign territory insofar as the agency's function is compromised and the laws that agency seeks to enforce undermined.

RCCL next argues that §1001 is not properly invoked because the United States has enacted a more specific "false statement" law, APPS, regulating the specific conduct at issue, and thus cannot elect instead to proceed under 18 U.S.C. §1001. The principle of statutory construction that a specific statute is given precedence over a more general statute addressing the same conduct is invoked by Defendant to suggest that APPS, with its penalty provisions, is the proper statute under which to proceed. *See, e.g., Simpson v United States*, 435 U.S. 6, 15 (1978) (recognizing "the principle that gives precedence to the terms of the more specific statute where a general statute and a specific statute speak to the same concern "); *see also San Pedro v United States*, 79 F.3d 1065, 1069 (11th Cir. 1996) (following "the principle, upheld by the Supreme Court on numerous occasions, that a specific statute takes precedence over a more general one.") RCCL argues that this principle is particularly applicable to the case at bar as the alleged conduct in the case is precisely addressed– and not punished-- by the more specific  Thus, resort to the more general §1001 is precluded as a matter of law, in addition, such a prosecution would raise lenity and due process concerns (*see infra*)

However, the principle that when an act violates more than one statute, the defendant may be charged under either law is well-settled. *See, e g , U S v Batchelder*, 442 U.S. 114, 123-24 (1979); *see also U S v Hopkins*, 916 F.2d 207 (5th Cir. 1990).  Absent a clear indication that Congress intended to foreclose proceeding under an applicable general statute rather than a more specific one, use of the more general statute to the situation is not disallowed.  *See U.S. v*

*Hopkins*, 916 F.2d 207, 218 (5ᵗʰ Cir. 1990). The basis for the requirement that there be a "clear indication" of irreconcilable conflict between the general statute and the more specific statute to create an implied repeal to exist is because of the strong public policy against implied repeals. *See, e.g., Blanchette v Connecticut General Insurance Co*, 419 U.S. 102, 134 (1974) (requiring a "positive repugnancy" for the existence of a new statute to partially repeal a prior statute).

Section 1001 was designed to be a general statute reaching a broad array of misconduct. Multiple challenges to the applicability of §1001 to cases where more specific false statement statutes exist have been unsuccessful; it seems to us from a review of the applicable law that it is a rare situation in which §1001 should be deemed inapplicable due to the foregoing. *See, e.g., U.S v Herring*, 916 F.2d 1543 (11ᵗʰ Cir. 1990), *cert denied*, 500 U.S. 946 (1991) (holding §1001 prosecution for false statements in unemployment benefits not precluded by unemployment benefits statute specifically addressing topic); *U.S v Fern*, 696 F.2d 1269 (11ᵗʰ Cir. 1983) (upholding §1001 prosecution of making false statements to the IRS instead of a more specific misdemeanor statute); *U.S. v Anderez*, 661 F 2d 404, 407 (5ᵗʰ Cir. 1981) ("Courts have consistently read section 1001 broadly and allowed for prosecution under its terms even when a defendant could have prosecuted under a more specific misdemeanor provision with lesser penalties".) There is nothing in the enactment of APPS that indicates Congress' unambiguous intent to repeal other "false statement" laws; to the contrary, APPS explicitly indicates it does not repeal any such laws:

> Remedies and requirements of this chapter supplement and neither amend nor repeal any other provisions of law, except as expressly provided in this chapter. Nothing in this chapter shall limit, deny, amend, modify, or repeal any other remedy available to the United States or any other person, except as expressly provided in this chapter. 33 U.S.C. §1907(d).

In light of the caselaw generally allowing §1001 prosecutions to proceed despite the existence of a specific similar statute on the same point, the policy against implied repeal, and the express intent of Congress that the provisions in APPS are intended to supplement and not repeal existing laws, we find that prosecution of the conduct at issue under §1001 is appropriate.

The final contention in Defendant RCCL's motion to dismiss on domestic law bases is

that this prosecution implicates lenity and due process concerns. The principle of the rule of lenity is that ambiguities in the scope of penal provisions are to be resolved against the government. *See, e.g., U S v Brown*, 79 F.3d 1550, 1556-57 (11th Cir. 1996). RCCL cites *U.S. v Apex Oil Co*, 132 F.3d 1287 (9th Cir. 1997), in which the Ninth Circuit applied the rule of lenity to a count in an indictment charging the illegal discharge of oil in violation of APPS and MARPOL. The district court dismissed the count on the basis that the APPS regulation at issue was inconsistent or unclear in terms of other provisions of the statute and thus the rule of lenity mandated dismissal. *Apex Oil Co.*, 132 F.3d 1287 at 1289  The Court of Appeals affirmed, noting that experienced captains would have no way of knowing that the industry-standard practice at issue "is considered subject to criminal sanctions" and that this was the first time that the regulation had been enforced in this manner by the government. *Apex Oil Co*, 132 F 3d at 1291. RCCL also argues that it is unconstitutional to prosecute a defendant for conduct when there is no notice that the conduct at issue would subject the defendant to criminal penalties. *See, e.g., U.S. v Lanier*, 117 S.Ct. 1219, 1224-25 (1997).

This case presents a different situation. The conduct alleged is knowingly and wilfully presenting to the United States Coast Guard a writing that RCCL knew to contain materially false, fictitious and fraudulent entries. It is not necessary to reach the question of the obligation of RCCL to record various entries in the Oil Record Book while outside the jurisdiction of the United States and the attendant ability of the United States to enforce any omissions thereof in order to determine the obligation of RCCL not to knowingly and wilfully present a false writing to the United States Coast Guard. We do not think RCCL is contending that it is the industry-standard practice to do so such that they would have no way of knowing that such actions are considered subject to criminal sanctions. *See Apex Oil Co*, 132 F 3d at 1291.The right of the Coast Guard to board a vessel and inspect the log is well-established in maritime law, and the consequences of misrepresenting pollution discharges– regardless of the applicable statute-- cannot be said to be so unclear so as to mandate lenity. Finally, we do not believe that RCCL's due process rights are abridged in this case. As the government notes, contending a due process violation by a statute in constant use, especially one which criminalizes the inherently bad conduct of lying to the government about something important, is unconvincing. We do not find

that dismissal is appropriate based on lenity or due process considerations.

## II. International Law & Applicability of 18 U.S.C. §1001: MARPOL

The next set of arguments which RCCL invokes in favor of dismissal is that the charging theory of this case is inconsistent with international law. RCCL contends that prosecution is precluded by binding provisions of international law under both MARPOL and UNCLOS. Although oral argument addressed all aspects of the Motion to Dismiss, the expert testimony presented by both sides regarding this issue was most informative and helpful. The former Ambassador-at-Large and Special Representative of the President of the United States to the Third United Nations Conference on the Law of the Sea, Elliot L. Richardson, testified as to the international law issues presented in this matter. Professor Bernard Oxman, a senior member of the U.S. Delegation to the Third U.N. Conference on the Law of the Sea, also testified regarding the implications to the law of the sea in this case. On behalf of the government, Rear Admiral Paul Blaney, Chief Counsel of the United States Coast Guard, Captain Thomas Gilmour, Director of Field Activities for Marine Safety and Environmental Protection, United States Coast Guard, and Robert K. Harris, Assistant Legal Adviser for Oceans International Environment and Scientific Affairs at the Department of State testified by Affidavit regarding the position of the United States in this matter.

The MARPOL Protocol, more formally known as the Protocol of 1978 Relating to the International Convention for the Prevention of Pollution from Ships, 1973, is a treaty to which the United States is a party; its provisions are codified as U.S. law as APPS, the Act to Prevent Pollution from Ships, at 33 U.S.C. §1901 *et seq*. MARPOL establishes a framework for addressing discharges of pollutants on the high seas. Among the requirements, under MARPOL is that ships must maintain an Oil Record Book in which entries of activities relating to oil discharges are to be entered. (Regulation 20 of Annex 1 of MARPOL). As a result, the <u>Nordic Empress</u> was under an obligation by MARPOL to maintain an Oil Record Book; make proper entries in that book of all oil discharge activities, and keep the Oil Record Book available for inspection *Id* For jurisdictional purposes, the requirements concerning the Oil Record Book apply to a ship that operates under the authority of a country other than the United States, such as

the Nordic Empress, while the ship is "in the navigable waters of the United States, or while at
port or terminal under the jurisdiction of the United States." 33 C.F.R. §151 09(a)(5). While
MARPOL authorizes, *inter alia*, a port state to inspect a ship to verify a discharge in violation of
MARPOL, it requires a port state finding a discharge violation contravening the Convention to
forward the report to the Secretary for further action from the flag state. 33 U.S.C §1907(c)(2),
MARPOL, Art. 6(2).  RCCL contends that the authority of port states is strictly limited to
providing assistance to the flag state by enforcing the recordkeeping requirement through
inspections, and that the United States does not have jurisdiction to enforce Oil Record Book
violations occurring outside the navigable waters of the United States under MARPOL.  Any
violations of MARPOL, including a violation of Oil Book requirements, must be responded to by
way of the referral system outlined above

      The government contends first that the Defendant is not charged with a violation of
APPS/MARPOL, but rather of domestic law, 18 U.S.C. §1001. The protocol outlined in
MARPOL/APPS addresses a framework for international maritime law, but the government
states that this does not- and cannot- limit the United States' jurisdiction for crimes committed
in internal waters and ports. *See, e.g., Nevada v Hall*, 440 U.S. 410, 416 (1979) (holding that
domestic jurisdiction is absolute for crimes committed within borders of a country), *Wilson v
Girard*, 354 U.S. 524, 529 (1957) ("A sovereign nation has exclusive jurisdiction to punish
offenses against its laws committed within its borders, unless it expressly or impliedly consents
to surrender its jurisdiction.")  The government argues that MARPOL does not explicitly or
implicitly regulate what a nation may do to enforce domestic law violations that occur in port,
and in fact limiting recourse for such crimes solely to the referral protocol under MARPOL
would result in the situation where coastal states could not criminally enforce domestic laws
against pollution violations by foreign flag vessels

      The government also questions the standing of RCCL to litigate rights under international
law treaties as treaty rights, if any, generally accrue to sovereign nations and not to individual
defendants. *See, e.g , U.S  v Noriega*, 746 F. Supp. 1506, 1533 (S.D. Fla. 1990) ("The rationale
behind this rule is that treaties are 'designed to protect the sovereign interests of nations, and it is
up to the offending nations to determine whether a violation of sovereign interests occurred and

-11-

requires redress'" (*quoting U S. v Zabaneh*, 837 F.2d 1249, 1261 (5th Cir. 1988)). Individuals may possess standing under an international law treaty if there is a treaty and it is self-executing. *See, e.g., Haitian Refugee Center v Baker*, 949 F.2d 1109, 1110-11 (11th Cir. 1992) (holding that Article 33 of the 1967 United Nations Protocol Relating to Status of Refugees did not afford enforceable rights to Haitian refugees because "it is not self-executing and thus provides no enforceable rights); *see also U S  v Thompson*, 928 F.2d 1060, 1066 (11th Cir. 1991) (holding defendant lacked standing because "a treaty must be self-executing in order for an individual citizen to have standing to protest a violation of the treaty")   A treaty is self-executing if it both requires no implementing legislation and provides a specific private right of action. *Haitian Refugee Center v Baker*, 949 F 2d 1109, 1110 (11th Cir. 1992).

The United States is a party to the MARPOL treaty, MARPOL is not self-executing. MARPOL contains many provisions requiring signatory nations to enact laws to execute the treaty, and accordingly cannot be regarded as self-executing *See, e.g., MARPOL Article I(1);* Article 4(2). The government argues because MARPOL is not self-executing, RCCL has no standing to assert rights under MARPOL.

We recognize that MARPOL constitutes valid United States law because of the enactment of APPS, not because it is self-executing or directly enforceable without enacting legislation. We have held in the context of domestic law issues that MARPOL/APPS does not preclude this §1001 prosecution, *see supra*, and we are not convinced that the result should be any different under applicable international law  We need not reach the question of whether defendant RCCL has standing to litigate its rights under MARPOL, as we find that this prosecution does not violate any of defendant's rights under MARPOL

Rather than barring this §1001 prosecution, MARPOL/APPS seems to complement §1001 so as to maximize pollution enforcement efforts in both the domestic and international arena. MARPOL/APPS establishes a comprehensive, well-balanced international regulatory scheme for limiting discharges of pollutants on the high seas. 18 U.S.C. §1001 establishes a framework through which to prosecute false writings or statements to an agency of the United States that are made knowingly and wilfully.

The government's view of this case is that the presentation of the false Oil Record Book

-12-

in port constitutes a separate offense from the alleged oil discharge and failure to record at that time. To the extent that the presentation of the materially false Oil Record Book to the Coast Guard constitutes a separate, actionable crime under United States law, MARPOL does not bar that prosecution. MARPOL's protocol for addressing pollution on the high seas cannot extend so far as to encroach upon the right of the United States to punish under §1001 a false statement presented in port to United States authorities. *See Nevada v Hall, supra*; *see also* MARPOL Annex 1, Article 4(2), *infra*. RCCL's view of this case is that the Indictment addresses an alleged Oil Record Book infraction occurring in conjunction with an alleged oil discharge. To the extent to which the presentation of the materially false Oil Record Book to the Coast Guard can be interpreted as somehow falling under the rubric of MARPOL and the law of the seas, we do not view MARPOL and §1001 as necessarily irreconcilable  The expert testimony of Robert K. Harris, Assistant Legal Advisor for Oceans, International Environment and Scientific Affairs at the Department of State, supports this conclusion. Mr. Harris states that "even if the MARPOL Protocol and the Law of the Seas Convention were invocable by the defendant in this case, neither constrains the ability of the United States to enforce Title 18, United States Code, Section 1001, with respect to a violation committed in port " (Affidavit of Robert K. Harris, ¶8). We also note the concurrent jurisdiction provided for in Article 4(2) of MARPOL and cited by the District Court in the related Puerto Rico case:

> Any violation of the requirements of the present Convention within the jurisdiction of any Party to the Convention shall be prohibited and sanctions shall be established under the law of that party. Whenever such a violation occurs, that Party shall either:
> > (a) cause proceedings to be taken in accordance with its law; or
> > (b) furnish to the Administration of the ship such information and evidence as may be in its possession that a violation occurred

We agree with RCCL that the careful international regulatory balance created by MARPOL must be respected  Equally compelling, however, is the right of the United States to enforce its laws within its borders  *See Wilson v Girard, supra*. If the policy goal of a comprehensive regime of anti-pollution measures is to be achieved, it is necessary that domestic

-13-

and international law work together to the extent possible to maximize enforcement. The discharge of oil in an improper manner is one crime; the failure to keep an Oil Record Book as required under MARPOL/APPS is another; and the deliberate presentation of a false material writing to the U.S. Coast Guard is another   The concurrent jurisdiction provision cited above is one indication that to the extent possible, international and domestic law should cooperate in regulation and enforcement. We refer to the testimony of Captain Thomas Gilmour, United States Coast Guard, who opines that "[a]ny holding that would undermine the ability of port states to ensure accuracy and truthfulness in these certificates and records would adversely affect the goal of the IMO, the Congress, and the Coast Guard to eliminate substandard ships and operations. This same principle applies to many other domestic laws and regulations that are based on international standards." (Affidavit of Captain Thomas Gilmour, ¶10)  Referral to the flag state may be proper in one instance; prosecution under United States law appropriate in another. We necessarily do not entertain the question of the proper policy choices regarding the wisdom of the decision to prosecute this matter as opposed to referral; such arguments are reserved for consideration by the Executive Branch. Assuming without deciding the standing of RCCL to assert MARPOL in its defense, we do not believe that under the facts as presented, MARPOL/APPS would preclude this prosecution.

## III. International Law & Applicability of 18 U.S.C. §1001: UNCLOS

RCCL also invokes UNCLOS , the United Nations Convention on the Law of the Sea, contending that several provisions thereunder preclude this action. RCCL argues that although UNCLOS has not yet been ratified by the U S. Senate, it should nonetheless be given the weight of law such that it bars this prosecution for three reasons. First, the Puerto Rican opinion in the related case considered this issue and ruled that UNCLOS should be considered as binding on the United States from date of its submission by the President to the Senate on September 23, 1994. *United States v Royal Caribbean Cruises Ltd , et al.*, _____ F  Supp. _____ (D. P.R. Sept 19, 1997). RCCL argues that collateral estoppel requires us to apply that holding to this case as pending litigation between same two parties is present. *See, e g , Greenblatt v Drexel Burnham Lambert, Inc* , 763 F.2d 1352, 1360 (11th Cir. 1985).  Second, customary international law

-14-

principles, which can be binding as a component of domestic law, require this Court to consider UNCLOS as setting forth binding principles of international law. *See, e.g., Lauritzen v Larsen*, 345 U.S. 571, 581-82 (1953) ("international maritime law of impressive maturity and universality... has the force of law .. from acceptance by common consent of civilized communities of rules designed to foster amicable and workable commercial relations ") RCCL argues that recognition of UNCLOS by three successive Presidential administrations, as well as the expert testimony and Affidavits produced in the hearing conducted by the Court in this matter, establishes that UNCLOS should be regarded as binding U S. law such that implementing legislation is not necessary Third, the principle of customary international law in connection with the Law of the Sea Convention, which binds the United States by Article 18 of the Vienna Convention on the Law of Treaties, provides that a country which has expressed its consent to be bound by an international treaty-- including one not yet entered into-- shall not engage in any acts which would defeat the object and purposes of that agreement. RCCL states that these criminal proceedings clearly cross this Article 18 threshold as they undermine fundamental navigation safeguards.

RCCL argues that various provisions of UNCLOS are violated by this prosecution. Article 228 of UNCLOS effectively sets out the international equivalent of a double jeopardy prohibition, and Liberia has already instituted and concluded its own proceedings. *See* Determination of the Republic of Liberia of February 10, 1994 As a result, proceeding with this case would violate the provisions of Article 228.1, which applies to "proceedings to impose penalties in respect of any violation of... international rules and standards relating to the prevention, reduction, and control of pollution from vessels committed by a foreign vessel beyond the territorial sea of the State instituting proceedings. . " RCCL contends that as the matter referred to Liberia was the entire Coast Guard report, including the alleged discharge and the Oil Book violation, this double jeopardy provision prevents this prosecution. The second UNCLOS provision cited by RCCL is Article 228.2, which establishes that "proceedings to impose penalties on foreign vessels shall not be instituted after the expiry of three years from the date on which the violation was committed...." As the alleged violation occurred on or about February 1, 1993, and this case was filed on February 19, 1998, RCCL asserts that the statute of

limitations provision is violated  RCCL also points out that the government cannot claim this statute of limitations is inapplicable because they were not aware of the essential facts of this case until the grand jury testimony of Carlo Del Moro on October 12, 1996, as all facts were in the record as early as the May 19, 1993 Coast Guard investigation report. Finally, UNCLOS 218.2 prohibits the United States from initiating a prosecution absent a request from Liberia, the flag state, or Bahamas, the state "damaged or threatened by the discharge violation " No such request has occurred; in fact Liberia has lodged a Diplomatic Note concerning this action with the United States Department of State. RCCL claims we have no jurisdiction over the instant action and must dismiss on that basis as well.

The government first contends that RCCL lacks standing to raise the provisions of UNCLOS in its defense. Even if UNCLOS constitutes customary international law, customary international law is not self-executing and as a result Defendant does not have standing to litigate rights or seek protection under UNCLOS.  To the extent that RCCL has standing to invoke the provisions of UNCLOS, the government argues that UNCLOS is inapplicable to this case  This action addresses a crime committed in port, and UNCLOS does not explicitly or implicitly regulate what a nation may do to enforce its domestic laws in port. Finally, the government asserts that none of the provisions of UNCLOS are violated by this prosecution.

According to the government, UNCLOS places no restriction on the enforcement of domestic laws for violations committed while a ship is in port. The government argues, as it did in the context of the applicability of UNCLOS more generally, that the Article 228.1 jurisdictional limits for searches, seizures, enforcement, proceedings, and penalties for certain discharge violations are based upon the idea that the location of the violation as being in or beyond the territorial sea, not in port  *See, e.g.*, UNCLOS, Art. 218, 220, 228, 230  Further, the State Department letter to Liberia dated July 28, 1993, addresses only an "alleged discharge violation" in violation of MARPOL, Annex I, Regulation 9  The government argues that no alleged violation of false Oil Book Records-- either via §1001 or Regulation 20 of MARPOL, which relates to Oil Record Books– was referred and accordingly the double jeopardy provisions contained in Article 228.1 do not apply, as the instant matter has not been adjudicated. To the extent that Liberia did evaluate alleged Oil Record Book improprieties, *see* Determination of the

-16-

Republic of Liberia of February 10, 1994, the pending Indictment refers to the knowing presentation of a false statement while in port to the United States Coast Guard, which is a different matter than falsifying an Oil Record Book at the time of an alleged illegal discharge. The government also points out that even if this issue were referred under MARPOL/UNCLOS, it is unlikely that Liberia would possess venue or jurisdiction to apply United States domestic law to prosecute false statements or acts of obstruction committed in a United States port constituting a crime under United States law There can be no double jeopardy if the crime at issue was not adjudicated by Liberia. Article 228.2, referring to the three-year statute of limitations on proceedings, is rejected by the government for two reasons. First, UNCLOS places no restrictions on the enforcement of domestic laws for violations committed while a ship is in port. Second, the crime that this Indictment alleges is not barred by international law and thus the UNCLOS statute of limitations does not apply to this case. Article 218, which addresses "Enforcement by port States," addresses discharge violations, the government argues that by its own language Article 218 does not regulate or restrict law enforcement for violations of domestic law occurring in port. This action prosecutes a crime which is not barred by international law; in fact, is not and cannot be addressed by international law, and thus the UNCLOS limitation on proceedings absent a request from the flag state does not apply in this case.

We first analyze whether or not UNCLOS should be accorded the weight of law in these proceedings. We are not convinced that UNCLOS, a treaty which all parties agree applies to protect navigational freedoms and the law of the sea, has any bearing on this domestic prosecution. The alleged crime occurred in port in Miami, Florida, and involved presentation of a materially false writing to the United States Coast Guard. The extent to which this action is so connected to the protocols set forth in UNCLOS such that the law of the sea is properly invocable is, as was acknowledged by former Ambassador Richardson, a question of degree. As an obvious hypothetical, the expert testimony of both former Ambassador Richardson and Professor Oxman concurred that assault and battery upon a Coast Guard Boarding Officer investigating an incident of possible pollution is not a violation in respect of pollution, and thus the United States would have jurisdiction to prosecute it. Ambassador Richardson agreed that false statements or obstruction of justice pursuant to legal proceedings, even pursuant to this

-17-

legal proceeding, would not be cognizable under the law of the sea convention. Professor Oxman also agreed that bribery of an officer of a ship in an attempt to conceal an incident of pollution should probably not be regarded as a violation in respect of pollution violations. The fact that international issues are implicated is not enough to divest the United States of jurisdiction. These hypotheticals indicate the continuum along which infractions of domestic law related to, but not necessarily implicating, international law of the sea occur. Presentation of a false Oil Record Book seems more appropriately characterized, as do the above examples, as an essentially domestic law violation over which the United States properly has jurisdiction.

We further note that were the Oil Record Book accurate, in that it reflected any and all alleged illegal oil discharges, there would be no possible §1001 prosecution in this action. Alternatively, were there no alleged oil discharge but the Oil Record Book were materially false, this action would still be able to proceed. As a result, whether the alleged oil discharge actually occurred or not is in many ways irrelevant to this action. Because the gravamen of this action is not the pollution itself, or even the Oil Record Book violation occurring at that time, but the misrepresentation in port, this proceeding is not properly characterized as "in respect to a pollution incident" such that UNCLOS, a convention addressing the law of the sea and appropriate protocols thereof, is applicable to this case.

However, assuming *arguendo* that UNCLOS may be raised as a potential issue in this proceeding, RCCL asserts that collateral estoppel mandates that we reject the government's challenge to the standing of Defendant to assert rights under UNCLOS, and that we thus consider UNCLOS as binding on the United States in this matter  Collateral estoppel, or issue preclusion, "applies when a judgment forecloses relitigation of a matter that has been litigated and decided " *Mike Smith Pontiac v Mercedes-Benz of No  America*, 32 F 3d 528, 532 (11ᵗʰ Cir. 1994) (internal citations omitted). The Eleventh Circuit has established three prerequisites to the application of collateral estoppel: "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action." *Id , citing Greenblatt v Drexel Burnham Lambert*, 763 F.2d 1352, 1360 (11ᵗʰ Cir. 1985)

We have carefully reviewed the decision by the District Court in Puerto Rico, and cannot conclude that the issue as to whether or not UNCLOS carries the weight of United States law is collaterally estopped from consideration in this case  The issue before us of whether UNCLOS is properly considered as binding United States law and applicable to the case was considered by the Court in Puerto Rico, and it concluded that "[m]atters of pollution by foreign vessels within the territorial sea of the United States are governed by UNCLOS. Although the treaty arising from the convention is currently pending ratification before the Senate, it nevertheless carries the weight of law from the date of its submission by the President to the Senate." *United States v Royal Caribbean Cruises Ltd., et al* , _____ F. Supp. _____ (D. P R. Sept 19, 1997) (citing Article 19 of the Vienna Convention on the Law of Treaties). The issue was briefed and resolved by the Court's opinion, and thus was actually litigated  *See, e g., Bush v Balfour Beatty Bahamas, Ltd* , 62 F.3d 1319, 1323 (11th Cir. 1995) (holding that "fully litigated" requires both that the issue was effectively raised in the prior action, either through pleadings or development of evidence and argument at trial or on motion and that the losing party have had a fair opportunity procedurally, substantively, and evidentially to contest the issue)

However, the third prong of the collateral estoppel, the requirement that the determination of the issue be a critical and necessary part of the litigation, is not met   "The necessity and materiality of findings by another court is determined by examining the claim in the other court... The subsidiary issue decided in the earlier suit must bear exactly the same operative relationship to the claim as it does to the pending suit for collateral estoppel to be applied in the pending suit " *Villas of Lake Jackson, Ltd., v Leon County*, 906 F  Supp  1509, 1523 (N.D  Fla  1995). The Court's holding was predicated upon the statement that "Matters of pollution by foreign vessels within the territorial sea of the United States are governed by UNCLOS." *United States v Royal Caribbean Cruises Ltd , et al.*, _____ F. Supp. _____ (D  P.R. Sept 19, 1997). In the Puerto Rico case, there was a ten-count Indictment arising out of the alleged illegal discharge of oil into the navigable waters of the United States and various false statement and witness tampering charges. The Puerto Rico District Court was asked to determine the weight of law to give UNCLOS under the above circumstances  However, in this case, the only count in the Indictment alleges a violation of §1001, we have found that UNCLOS is not necessarily relevant

under the facts in this case. *See supra.* Because the facts in the case governing the applicability of UNCLOS are so different from the Puerto Rico case, we do not believe that the subsidiary issue of the applicability of UNCLOS decided in the earlier suit has substantially the same operative relationship to the claim as it does in this suit  In consideration of the fact that "any doubt as to whether a particular issue was actually litigated in the previous action or whether appellant had its day in court must be resolved in favor of appellants..." *Villas of Lake Jackson, Ltd., v Leon County*, 906 F. Supp. 1509, 1523 (N.D. Fla. 1995) (internal citations omitted), we find that the issue of the applicability UNCLOS to this proceeding is not collaterally estopped, and accordingly we will consider it.

RCCL argues in the alternative to collateral estoppel that UNCLOS should be considered customary international law and thus be considered binding on this Court. It does appear from all of the testimony produced in this case, as well as the caselaw in this area, that UNCLOS is properly considered customary international law. The expert testimony of Elliot Richardson and Bernard Oxman indicates the degree to which UNCLOS is regarded as customary law; Mr Oxman explains that the requirements of UNCLOS should be respected under international law

> ...by the established principle that U.S statutes are not to be interpreted and applied in a manner inconsistent with international law if any other interpretation is possible, by the clear undertaking by President Reagan to respect the relevant rules of the Convention, and by the firm position of the Executive Branch that the United States will respect the rules set forth in the Convention regarding navigation and other matters, expects other nations to do the same, and reserves the right to take such measures as may be necessary to ensure that they do so. (Affidavit of Bernard H Oxman, ¶21).

However, that UNCLOS constitutes customary international law does not end the inquiry for us. An individual defendant is afforded standing to assert rights under an international treaty only if the treaty is self-executing, *see infra*, and we do not believe that under the law in this Circuit customary international law can be regarded as self-executing. A "violation of international common law, which obviously could not be self-executing in the sense that a treaty might be, would not affect the legality or constitutionality of the Coast Guard's actions and would not affect the court's jurisdiction." *U S. v Williams*, 617 F.2d 1063, 1090 (5th Cir 1980), *citing U.S v*

*Postal*, 589 F.2d 862 (5th Cir. 1979) (holding *inter alia* that a United States Court retains jurisdiction over persons arrested on a foreign ship beyond the U.S. navigable waters when said arrest violates a treaty to which the United States and the foreign country are parties). While the Defendant does attempt to distinguish *Williams*, we find no authority for the proposition that customary international law is properly considered self-executing so as to afford the Defendant standing to litigate its rights under UNCLOS  However, we need not decide if UNCLOS is self-executing, as we find no specific right of private action in UNCLOS that would afford an individual litigant redress under the relevant provisions of UNCLOS. *See Haitian Refugee Center v Baker, supra*  To the contrary, the "carefully balanced system of prosecutorial priorities" involving the flag state, the coastal state, and the port state outlined in the pleadings and by Professor Oxman suggests that a private right of action in this context would be inconsistent with UNCLOS. Because we find no specific relevant private right of action under UNCLOS, as a matter of law RCCL does not have standing to litigate its rights under UNCLOS. Based on the foregoing, we find that RCCL does not possess standing to litigate its rights under UNCLOS and deny the motion to dismiss on that basis.

Even assuming UNCLOS is properly considered customary international law and RCCL possesses standing, however, we find no violation of UNCLOS occurred  The first provision invoked by RCCL is Article 228.1, which addresses "Suspension and restrictions on institution of proceedings." Article 228.1 states that.

> [p]roceedings to impose penalties in respect of any violation of applicable laws and regulations or international rules and standards relating to the prevention, reduction, and control of pollution from vessels *committed by a foreign vessel beyond the territorial seas of the State instituting proceedings* shall be suspended upon the taking of proceedings to impose penalties in respect of corresponding charges by the flag state.... (emphasis added).

By its own terms, Article 228.1 applies to violations committed at sea  As we have held, the violation alleged in this Indictment, presentation of a materially false Oil Record Book, occurred in port  To the extent that Liberia did evaluate alleged Oil Record Book improprieties, the pending Indictment refers to knowing presentation of a false statement while in port to the

-21-

United States Coast Guard, which is a different matter than the allegedly referred charge of falsifying an Oil Record Book at the time of an alleged illegal discharge. We agree that even if this issue were referred under MARPOL/UNCLOS, it is unlikely that Liberia would possess venue or jurisdiction to adjudicate it properly, and thus find that the asserted "double jeopardy" provision in Article 228.1 is not violated by this prosecution.

The relevant part of the second provision raised, Article 228.2, requires that "[p]roceedings to impose penalties on foreign vessels shall not be instituted after the expiry of three years from the date on which the violation was committed...." We do not believe that Defendant's interpretation, which argues that the statute of limitations in UNCLOS applies to *all* proceedings by non-flag states to penalize activities of foreign-flagged vessels, is tenable. Reading Article 228.2 that broadly would potentially change hundreds of statutes of limitations established in United States law simply because a foreign-flagged vessel were involved, upsetting the balance between domestic and international maritime law with which this action is so concerned. The more realistic interpretation is to read the provisions of Article 228.2 to limit, as they do by implication,  non-flag states to three years in which to sanction foreign-flagged vessels for violations of UNCLOS.  Following that reading, the three-year statute of limitations provision is inapplicable to this matter, as the violation alleged in this action is a violation of 18 U.S.C. §1001, not UNCLOS.

The final provision raised by Defendant, Article 218 1, addresses "Enforcement by port States." It mandates that no proceedings

> in respect of any discharge from that vessel outside the internal waters, territorial sea, or exclusive economic zone. . shall be instituted in respect of a discharge violation in the internal waters, territorial sea, or exclusive economic zone of another State unless requested by that State, the flag State, or a state damaged or threatened by the discharge violation.

It is uncontested that there has been no request by Liberia, the flag state, or the Bahamas, the coastal state. By its own language, Article 218 limits itself to proceedings "in respect of any discharge from a vessel outside the internal waters, territorial sea, or exclusive economic zone." While the interpretation of the term "in respect of" is admittedly imprecise, Article 218 1 plainly directs its prohibitions to discharge violations and not domestic port violations  As a result, we

do not find that the provisions of Article 218.1 are violated by this action.

Even assuming UNCLOS has the weight of law and Defendant RCCL possesses standing to raise UNCLOS as an individual litigant, because we do not find that any of the cited provisions of UNCLOS are violated by this proceeding, we deny the Motion to Dismiss on those grounds.

## IV. International Law & Applicability of 18 U.S.C. §1001: Law of the Sea Convention

The final argument advanced by RCCL as to why international law bars this prosecution is that this action is inconsistent with the carefully negotiated allocation of jurisdiction in the Law of the Sea Convention, and allowing this prosecution threatens to upset the international balance of the Convention. RCCL contends, both in its pleadings and through expert testimony, that if this case is allowed to proceed, it will stand for the proposition that whenever a ship enters any port in any nation, it subjects every nautical mile, and not just those miles over which jurisdiction is vested under the Convention, to the scrutiny and potential criminal laws of that nation.

The government responds that there is an equally compelling, longstanding principle of international and domestic law that says a country has virtually absolute jurisdiction for crimes committed in its internal waters and ports  *See, e.g , Nevada v Hall*, 440 U S. 410, 416 (1979) (domestic jurisdiction is absolute for crimes committed within the borders of a country). Further, the matters of how the United States should engage in foreign policy and whether to enforce or refer to the flag state a case involving the intentional use of false documents in port is the prerogative of the Executive Branch and the government suggests that it is inappropriate for a court to decide policy in these situations, as the above contentions in Defendant's Motion to Dismiss in effect asks us to do.

We acknowledge the complex competing interests in this case. However, we do not, and in fact cannot, engage the nonjusticiable political issues presented in this prosecution. While we appreciate the position of the Government of Liberia as communicated to us in its letter dated May 7, 1998, as well as the position of the United States Department of State regarding this matter, filed on May 11, 1998, we cannot take such considerations into account. The arguments

concerning the implications for the international balance of powers presented by this prosecution are policy arguments concerning matters of foreign diplomacy, matters by definition most properly reserved to the executive branch of our government, and we decline to consider them in our ruling.

### Conclusion

Based upon the foregoing, and upon consideration, it is hereby **ORDERED AND ADJUDGED** that Defendant RCCL's Motion to Dismiss is hereby **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13 day of May, 1998.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record

-24-