AO 245B (Rev. 8/96) Sheet 1 - Judgment in a Criminal Case

SEP 17 1998

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA.· MIAMI

# United States District Court
## Southern District of Florida

UNITED STATES OF AMERICA

v.

**ROYAL CARIBBEAN CRUISES. LTD.**

## JUDGMENT IN A CRIMINAL CASE

(For Offenses Committed On or After November 1, 1987)

Case Number:  **1:98CR00103-001**

**AUSA Thomas Watts-Fitzgerald, Norman Moscowitz, Esq.**

Defendant's Attorney

## THE DEFENDANT:

pleaded guilty to count(s)   **one of the one count indictment**

pleaded nolo contendere to count(s)
which was accepted by the court.

was found guilty on count(s)
after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. § 1001 | **False srtatement** | **02/01/1993** | **1** |

The defendant is sentenced as provided in pages 2 through    6    of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

The defendant has been found not guilty on count(s)

Count(s)                                            (is)(are) dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.:

Defendant's Date of Birth:

Defendant's USM No.:

Defendant's Residence Address:

**1050 Caribbean Way**

**Miami**                          **FL      33132**

Defendant's Mailing Address:

**1050 Caribbean Way**

**Miami**                          **FL      33132**

09/16/1998

Date of Imposition of Judgment

Signature of Judicial Officer

**Donald M. Middlebrooks,**

**United States District Judge**

Name & Title of Judicial Officer

9-17-98

Date

AO 245B (Rev. 8/96) Sheet 4 - Probation

DEFENDANT:     **ROYAL CARIBBEAN CRUISES, LTD.**
CASE NUMBER:   **1:98CR00103-001**

# PROBATION

The defendant is hereby placed on probation for a term of          **5**          **year(s)**

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

    The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of placement on probation and at least two periodic drug tests thereafter, as directed by the probation officer.

    The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

[X]  The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

    If this judgment imposes a fine or a restitution obligation, it shall be a condition of probation that the defendant pay any such fine or restitution in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

    The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). The defendant shall also comply with the additional conditions on the attached page (if indicated below).

**See Special Conditions of Supervision - Page     3**

# STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

DEFENDANT:           **ROYAL CARIBBEAN CRUISES. LTD.**

CASE NUMBER:      **1:98CR00103-001**

# SPECIAL CONDITIONS OF SUPERVISION

1. Compliance with a Detailed Environmental Protection Plan approved by the Court.  (See attached plea agreement)
2. The defendant shall make full and complete disclosure of its business finances/financial records as required by the Probation Officer.
3. Probation may accompany law enforcement in an inspection of the defendnat's vessels, properties and place of business.

Judgment-Page    4    of    6

DEFENDANT:          **ROYAL CARIBBEAN CRUISES. LTD.**
CASE NUMBER:     **1:98CR00103-001**

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| **Totals:** | $          200.00 | $     1,000,000.00 | $ |

If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . . .  $ _____ _____

# FINE

The above fine includes costs of incarceration and/or supervision in the amount of $ _____ _____ .

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

The court determined that the defendant does not have the ability to pay interest and it is ordered that:

The interest requirement is waived.

The interest requirement is modified as follows:

# RESTITUTION

The determination of restitution is deferred until _____ _____ . An Amended Judgment in a Criminal Case will be entered after such a determination.

The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | * Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
|  |  |  |  |
| Totals: | $ _____ | $ _____ |  |

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994 but before April 23, 1996.

AO 245B (Rev. 8/96) Sheet 5, Part B - Criminal Monetary Penalties

Judgment-Page  5  of  6

DEFENDANT:      **ROYAL CARIBBEAN CRUISES, LTD.**

CASE NUMBER:    **1:98CR00103-001**

# SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A ☐     in full immediately; or

B ☐     $ _____ immediately, balance due (in accordance with C, D, or E); or

C ☐     not later than _____ ; or

D ☐     in installments to commence _____ day(s)after the date of this judgment.  In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

E ☐     in _____ *(e.g. equal, weekly, monthly, quarterly)* installments of $ _____ over a period of _____ year(s)to commence _____ day(s)after the date of this judgment.

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:

The defendant shall pay the cost of prosecution.

The defendant shall forfeit the defendant's interest in the following property to the United States:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment.  All criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program are to be made as directed by the court, the probation officer, or the United States attorney.

AO 245B (Rev. 8/96) Sheet 6 - Statement of Reasons

Judgment-Page   6   of   6

DEFENDANT:        **ROYAL CARIBBEAN CRUISES. LTD.**

CASE NUMBER:    **1:98CR00103-001**

# STATEMENT OF REASONS

☐ The court adopts the factual findings and guideline application in the presentence report.

## OR

☐ The court adopts the factual findings and guideline application in the presentence report except (see attachment, if necessary):

**Guideline Range Determined by the Court:**

Total Offense Level:        **N/A**

Criminal History Category:        **N/A**

Imprisonment Range:   **N/A**

Supervised Release Range:   **N/A**

Fine Range: $ _____ to $

☐ Fine waived or below the guideline range because of inability to pay.

Total Amount of Restitution: $

☐ Restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(d).

☐ For offenses committed on or after September 13, 1994 but before April 23, 1996 that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the forseeable future under any reasonable schedule of payments.

☐ Partial restitution is ordered for the following reason(s):

☐ The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.

## OR

☐ The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reason(s):

## OR

☐ The sentence departs from the guideline range:

☐ upon motion of the government, as a result of defendant's substantial assistance.

☐ for the following specific reason(s):

UNITED STATES DISTRICT COURTS
DISTRICT OF PUERTO RICO
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 96-333 (PG) |
| | ) | (D.P.R.) |
| | ) | |
| ROYAL CARIBBEAN CRUISES LTD. | ) | CASE NO. 98-103-CR-MIDDLEBROOKS |
| | ) | (S.D.Fla.) |
| Defendant. | ) | |

## PLEA AGREEMENT

The United States Attorney's Office for the District of Puerto Rico, the United States

Attorney's Office for the Southern District of Florida and the Environmental Crimes Section of the

United States Department of Justice  (collectively the "United States" or the "Government") enter

into the following plea agreement with ROYAL CARIBBEAN CRUISES LTD. ("Defendant" or

"RCCL"), also known as Royal Caribbean International, pursuant to Rule 11(e)(1)(B) of the Federal

Rules of Criminal Procedure.

1.    Guilty Pleas

A.  On June 3, 1998, or on such date as the Court may determine, RCCL shall plead guilty

in the United States District Court for the District of Puerto Rico to the following Counts of the

Grand Jury Indictment in United States v. Royal Caribbean Cruises Ltd., et al., Criminal Case Number

96-333 (PG), and make a factual admission of guilt to the Court as set forth in the accompanying

Factual Basis:

> Count 1:  Conspiracy to discharge harmful quantities of oil in the navigable waters
> and contiguous zone of the United States in violation of the Oil Pollution Act of 1990,
> 33 U.S.C. Sections 1319(c)(2)(A) and 1321(b)(3), and using materially false writings
> (presenting false Oil Record Books for RCCL cruise ships in U.S. ports) in a matter
> within the jurisdiction of the U.S. Coast Guard, in violation of 18 U.S.C Section

1001, all in violation of 18 U.S.C. Section 371;

Count 2:  Knowingly discharging a harmful quantity of oil into United States waters off the coast of San Juan, Puerto Rico from the <u>Sovereign of the Seas</u> cruise ship on October 25, 1994, in violation of the Oil Pollution Act of 1990, 33 U.S.C. Sections 1319(c)(2)(A) and 1321(b)(3);

Count 3:  Knowingly failing to immediately report to the government the discharge of oil into United States waters from the <u>Sovereign of the Seas</u> on October 25, 1994, in violation of the Oil Pollution Act of 1990, 33 U.S.C. Section 1321(b)(5);

Count 4:  Knowingly and willfully using a materially false writing (a false Oil Record Book for the <u>Sovereign of the Seas</u>) on October 25, 1994, during an investigation by the U.S. Coast Guard of oil pollution in the navigable waters and contiguous zone of the United States, in violation of 18 U.S.C. Section 1001;

Count 6:  Knowingly and willfully making a material false statement to a U.S. Coast Guard official on October 25, 1994 in San Juan, Puerto Rico, within a matter within the jurisdiction of the U.S. Coast Guard, by stating and causing to be stated to a U.S. Coast Guard official conducting a pollution investigation that the Oil Water Separator of the <u>Sovereign of the Seas</u> was working properly and had been used last on October 23, 1994, when the Defendant knew this statement to be false, in violation of 18 U.S.C. Section 1001;

Count 8:  Obstructing justice by corruptly persuading and attempting to corruptly persuade another person with intent to influence the testimony of that person before a federal Grand Jury in the District of Puerto Rico, in that a Second Engineer aboard the <u>Sovereign of the Seas</u> was directed to give a false explanation regarding the waste oil found in the overboard discharge pipe of that ship by a U.S. Coast Guard official conducting a pollution investigation on October 25, 1994, and to withhold information regarding equipment and procedures used to bypass the Oil Water Separator, in violation of 18 U.S.C. Section 1512(b)(1).

Count 10. Obstructing justice by corruptly persuading other persons to alter, destroy, mutilate, and conceal a pipe, which had been used to bypass the Oil Water Separator aboard the <u>Sovereign of the Seas</u>, after U.S. Coast Guard pollution investigators had left the <u>Sovereign of the Seas</u> on October 25, 1994, in San Juan, Puerto Rico, and before the U.S. Coast Guard was scheduled to re-inspect the <u>Sovereign of the Seas</u> on October 29, 1994, in Miami, Florida, in that RCCL employees were directed to remove, destroy and dispose of the bypass pipe with the intent to impair the object's integrity and availability for use in an official proceeding, in violation of Title 18, United States Code, Section 1512(b)(2)(B).

- 2 -

B.  On June 3, 1998, or on such date as the Court may determine, RCCL shall plead guilty in the United States District Court for the Southern District of Florida to the Grand Jury Indictment in <u>United States v. Royal Caribbean Cruises Ltd., et al.</u>, Case Number:   98-0103-CR-MIDDLEBROOKS, and make a factual admission of guilt to the Court as set forth in the accompanying Factual Basis.

> Count 1:  Knowingly and willfully using a materially false writing, i.e., a false Oil Record Book for the <u>Nordic Empress</u> cruise ship, during a February 1, 1993, investigation by the U.S. Coast Guard, of a discharge of oil observed by a Coast Guard aircraft on the ship's voyage from the Bahamas to Miami, Florida, in violation of 18 U.S.C. Section 1001.

2.    <u>Sentencing Guidelines and Penalties</u>

The Parties agree and understand that, because the crimes charged occurred after November 1, 1991, the United States Sentencing Guidelines relating to the sentencing of organizations (Chapter Eight) apply here, except to the extent that the provisions relating to the calculation and imposition for environmental crimes fines do not apply to the offenses charged in the Indictments.  The Parties agree that the maximum amount of the fines to be imposed under the statutes charged could be $500,000.00 per count, 18 U.S.C. § 3571(c)(3), or twice the gross pecuniary gain derived from the crimes or twice the gross pecuniary loss caused to the victims of the crime,  18 U.S.C. § 3571(d), and that the sentence may include a term of probation of at least one year but not more than five years. In addition, RCCL understands that each Court may order restitution to the victims of the crimes and must order the Defendant to pay a $200.00 mandatory special assessment for each count of conviction.

3.    <u>Corporate Authorization</u>

- 3 -

RCCL will provide to the United States written evidence in the form of a notarized resolution of the Board of Directors with both notary and corporate seals, certifying that Defendant is authorized to plead guilty to the felony charges as set forth in the Indictments, and to enter into and comply with all provisions of this agreement. The resolution shall further certify that the President and his designees are authorized to take these actions and that all corporate formalities, including but not limited to, approval by Defendant's directors, required for such authorization, have been observed. Defendant agrees that the President of RCCL shall appear on behalf of Defendant to enter the guilty pleas and also shall appear for imposition of the sentences in the United States District Courts for the District of Puerto Rico and the Southern District of Florida.

4.    Sentence Recommendation

In accordance with Federal Rule of Criminal Procedure 11(e)(1)(B), the United States and RCCL agree that the following specific sentences are the appropriate disposition of the cases currently pending in the District of Puerto Rico (Criminal Case No. 96-333 (PG)) and the Southern District of Florida (Case No. 97-0103-CR-MIDDLEBROOKS). For the purposes of the specific counts and Indictments at issue in this plea agreement and for the purposes of this agreement only, the United States and the Defendant agree that a criminal fine of $9,000,000.00 million is appropriate and may be imposed pursuant to 18 U.S.C. Section 3571(d).

A. The United States and Defendant agree to jointly recommend that the Court in the District of Puerto Rico impose the following sentence pursuant to 18 U.S.C. Section 3571(d):

1. A criminal fine in the total amount of $8,000,000.00, to be paid in full on the day of sentencing. The Parties jointly recommend that a criminal fine of $1,000,000.00 be imposed pursuant

- 4 -

to each count to which the Defendant is pleading guilty (Counts 1-4, 6, 8, and 10). Under the Oil Pollution Act of 1990, the fines imposed pursuant to Counts 2 and 3 will be directed to the Oil Spill Liability Trust Fund, pursuant to 33 U.S.C. Section 1321(s). For the purposes of the specific counts and Indictment at issue and for the purposes of this plea agreement only, the United States and the Defendant agree that the proposed criminal fine of $8,000,000.00 is appropriate and may be imposed pursuant to 18 U.S.C. Section 3571(d).

2. The parties agree to recommend that $1,000,000.00 of the total criminal fine amount of $8,000,000.00 be suspended for the explicit purpose of RCCL applying the suspended amount to performing Community Service pursuant to §8B1.3 of the Federal Sentencing Guidelines and in furtherance of satisfying the sentencing principles provided for under 18 U.S.C. Section 3553(a). Accordingly, the Parties agree that within ten (10) days after final acceptance of this agreement RCCL shall pay a total of $1,000,000.00 to the National Fish and Wildlife Foundation (hereinafter the "Foundation"). The Foundation is a charitable and nonprofit corporation established by Congress pursuant to 16 U.S.C.A. Section 3701 et seq. for the purpose of undertaking activities consistent with the mission of the United States Fish and Wildlife Service to further the conservation and management of the fish, wildlife, and plant resources of the United States, and its territories and possessions, for present and future generations. The explicit goal of RCCL's community service is to fund environmental projects and initiatives authorized by the Foundation designed for the benefit, preservation and restoration of the environment and ecosystems in the United States territorial sea of Puerto Rico and South Florida, including coral reef initiatives. The United States and the Defendant jointly recommend that the Defendant's $1,000,000.00 Community Service be split equally

between projects in the territorial sea of Puerto Rico and South Florida. Because the payment to the Foundation is community service by an organization, RCCL further agrees that it will not seek any reduction in its tax obligations as a result of this community service payment. Because the payment to the Foundation is community service as part of the total fine amount agreed upon in this plea agreement, RCCL will not characterize, publicize or refer to the community service as a voluntary donation or contribution.

3. A period of probation of five years, which shall include as a condition of probation the implementation of an environmental compliance program as described in paragraph 5 below. Upon motion of the Defendant to which the United States may respond and at the Court's discretion, probation may be terminated after three years if the Defendant has fully complied with the remedial measures in paragraph 5 below.

B. The United States and Defendant agree to jointly recommend that the Court in the Southern District of Florida impose the following sentence pursuant to 18 U.S.C. Section 3571(d):

1. A criminal fine in the total amount of $1,000,000.00, to be paid in full on the day of sentencing. For the purposes of the specific count and Indictment at issue and for the purposes of this plea agreement only, the United States and the Defendant agree that the proposed criminal fine of $1,000,000.00 is appropriate and may be imposed pursuant to 18 U.S.C. Section 3571(d).

2. A period of probation of five years, which shall include as a condition of probation the implementation of an environmental compliance program as described in paragraph 5 below. Upon motion of the Defendant to which the United States may respond and at the Court's discretion, probation may be terminated after three years if the Defendant has fully complied with the remedial

measures in paragraph 5 below.

     C.  Pursuant to Title 18, United States Code, Section 3605, the Parties agree to recommend that after the imposition of sentencing in both cases, the U.S. District Court in the District of Puerto Rico transfer jurisdiction over probation, including the remedial conditions of probation, i.e., the Environmental Compliance Program set forth in paragraph 5 of this plea agreement, to the U.S. District Court in the Southern District of Florida.

     D.  The participation of the United States in the joint recommendations set forth above are conditional upon the terms of this agreement, including:  (1) the Defendant taking the remedial measures set forth in paragraph 5; and (2) the Defendant paying the criminal fines and mandatory special assessments at the time of sentencing.

5.   Environmental Compliance

     As a condition of its probation, Defendant agrees to do the following to improve environmental compliance:

    1.    Submit a comprehensive written Environmental Compliance Program ("ECP") to the government for review 60 days after the signing of this agreement or 21 days prior to sentencing, whichever comes first, and that includes provisions addressing compliance with applicable laws regulating the generation, handling, storage, treatment and disposal of all waste streams, including waste oil, bilge waste, hazardous materials and addressing the training of employees regarding environmental matters. The ECP shall be subject to approval by the Courts. In particular, the ECP shall provide for the development of appropriate management practices to address the accumulation, handling, treatment and disposal of wastes, pollutants and hazardous materials on all cruise ships that it owns or operates. At a minimum, these management practices shall include a written environmental plan for the identification of all waste streams, the proper method for storage, treatment and disposal of those waste streams, and the cognizant person(s) responsible for the management of that waste. Each such employee shall receive training on environmental compliance and RCCL will maintain a

record of the type of training provided to each employee and the frequency of such training. Defendant shall also establish that employee compliance with RCCL environmental policies and U.S. law is a positive factor in all appropriate personnel evaluations and that failure to comply with such policies and laws are a negative factor;

2.   Employ a Senior Vice-President responsible for implementing the program and overseeing the ECP and employ an Environmental Officer on each cruise ship who shall report directly to the Chief Engineer or equivalent level and may report directly to the Master (Captain) of the ship and the Senior Vice-President regarding environmental matters;

3.   File quarterly reports with the Court, the undersigned prosecuting offices, the U.S. Coast Guard 7th District Marine Safety Office, and the Environmental Protection Agency regarding the status of the ECP and the results of all environmental audits conducted pursuant to the ECP. The Senior Vice-President responsible for the ECP shall review, sign and submit the quarterly reports to the Court;

4.   Defendant shall engage the services of an outside independent environmental consultant subject to the approval of the Court, that will audit each waste stream of each cruise ship owned or operated by the Defendant at least once annually to determine compliance with U.S. laws and regulations. All environmental audit reports shall be submitted to Defendant's Senior Vice-President responsible for environmental matters;

5.   A committee of RCCL's Board of Directors consisting of at least three Directors shall meet at least twice each year to effectuate, maintain and monitor RCCL's environmental policies, including the ECP, and to report to the full Board semi-annually concerning the ECP. As part of this process, the Senior Vice-President responsible for the ECP will report to the committee regarding the program and environmental compliance aboard each vessel and in each port;

6.   The environmental compliance program shall remain under the supervision of the Court for the duration of the term of probation; and

7.   Defendant agrees to assume all costs associated with the implementation, maintenance and court oversight of the ECP and this condition of probation.

6.   <u>Additional Liability</u>

- 8 -

A. In exchange for the Defendant's guilty pleas and admission of guilt the United States will dismiss Counts 5, 7 and 9 of the pending Indictment in <u>United States v. Royal Caribbean Cruises Ltd.</u>, Criminal No. 96-333, in the District of Puerto Rico at the time of sentencing.

B. The parties understand and agree that this plea agreement is strictly limited to the resolution of the specific counts contained in the pending Indictments in the District of Puerto Rico and the Southern District of Florida. No promises or agreements have been made regarding any other actual or potential criminal matters or liability that the Defendant, or its present and former employees, officers, executives, board members, agents, or contractors, may have in the District of Puerto Rico, Southern District of Florida or elsewhere. The Defendant understands that the United States is or may be engaged in ongoing investigations, including those which may be related to the charges contained in the pending Indictments and their investigations, and that such investigations are unaffected by this agreement. The Defendant understands and agrees that neither this paragraph nor this agreement limits the prosecuting authority of any sections or divisions of the Department of Justice, including the U.S. Attorney of any other judicial district, or any other federal, state or local regulatory or prosecuting authorities. Furthermore, this agreement does not provide or promise any waiver of any civil or administrative actions, sanctions, or penalties that may apply, including but not limited to: fines, penalties, claims for damages to natural resources, suspension, debarment, listing, licensing, injunctive relief, or remedial action to comply with any applicable regulatory requirement.

7.   <u>Express Waiver of Right to Appeal Guilty Plea and Sentence</u>

Pursuant to this plea agreement, the defendant agrees to enter an unconditional plea of guilty to the aforementioned counts of the Indictments.   As a result of entering the guilty plea, and with

- 9 -

regard only to the specific counts and Indictments at issue in this plea agreement, the defendant expressly waives all defenses or objections to the Indictments and reserves no future defenses or rights to appeal any decisions of the Courts. Defendant further expressly agrees to waive all constitutional, statutory, common law, jurisdictional and non-jurisdictional defects in the proceedings and/or defenses to the Indictments, including, but not limited to, any and all pretrial motions, post-trial motions, post-sentencing motions, defenses, objections or collateral attacks on the Indictments based on international law or customary international law, including the MARPOL Protocol and United Nations Convention on the Law of the Sea. In sum, the defendant expressly waives any and all appellate review with regard to the specific counts and Indictments at issue in this plea agreement.

The defendant is additionally aware that Title 18, United States Code, Section 3742 would normally afford the defendant the right to appeal the sentence imposed in these cases. In exchange for the United States' considerations afforded in this plea agreement, the Defendant hereby waives all rights conferred by Title 18, United States Code, Section 3742 to appeal any sentence imposed including any decisions rendered by the Courts in response to motions filed, any restitution order, or to appeal the manner in which the sentence was imposed, except a criminal fine in excess of that recommended by the Parties in this plea agreement. The Defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in 18 U.S.C. Section 3742(b). However, in the event that the United States appeals the Defendant's sentence pursuant to Section 3742(b), the Defendant shall be released from the above waiver of appellate rights solely with respect to sentencing.

The United States and Defendant also agree not to make any public statements regarding

- 10 -

these matters or this plea agreement prior to the United States filing this agreement in the U.S. District Courts for the Districts of Puerto Rico and the Southern District of Florida.

8.    Rejection of Plea by Court

Should either of Defendant's guilty pleas not be accepted by either Court for any reason, this agreement shall be null and void at the option of the United States.  In such an event, Defendant hereby waives any defense to any charges in these Indictments which might otherwise have been available under any statute of limitations or the Speedy Trial Act.

9.    Binding Final Agreement

None of the terms of this agreement shall be binding on the United States until this agreement is signed by the Defendant and defense counsel and until signed by the United States Attorneys for the District of Puerto Rico and the Southern District of Florida and by the Assistant Attorney General of the Environment and Natural Resources Division, or their designees.

It is further understood and agreed that this plea agreement is the only agreement between the United States and Defendant concerning this plea agreement and the two Indictments and is binding only on the United States Attorneys Offices of the District of Puerto Rico and the Southern District of Florida and the Department of Justice Environmental Crimes Section, supersedes all prior understandings, if any, whether written or oral and cannot be modified other than in a writing that is signed by all parties.  No other promises or inducements have been or will be made to the Defendant in connection with this case, nor have any predictions or threats been made in connection with this plea.  There are no other deals, bargains, agreements, letters or understandings which modify or alter

- 11 -

this agreement.

AGREED TO AND
RESPECTFULLY SUBMITTED,


GUILLERMO GIL
UNITED STATES ATTORNEY
DISTRICT OF PUERTO RICO

Date: 6/2/98          BY:        _Richard A. Udell /for_
                                 JORGE E. VEGA
                                 DEPUTY CHIEF, CRIMINAL DIVISION


THOMAS E. SCOTT
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

Date: 6/1/78          BY:        _Thomas C. Watts-Fitzgerald_
                                 THOMAS A. WATTS-FITZGERALD
                                 CHIEF, ENVIRONMENTAL CRIMES


LOIS J. SCHIFFER
ASSISTANT ATTORNEY GENERAL
ENVIRONMENT & NATURAL
        RESOURCES DIVISION
U.S. DEPARTMENT OF JUSTICE


Date: 6/2/98          BY:        _Richard A. Udell_
                                 RICHARD A. UDELL
                                 TRIAL ATTORNEY
                                 ENVIRONMENTAL CRIMES SECTION

- 12 -

Date: 6/2/98

MARK J. KAPPELHOFF
TRIAL ATTORNEY
ENVIRONMENTAL CRIMES SECTION

ROYAL CARIBBEAN CRUISES LTD.

Date: 5/29/98        BY:

JACK WILLIAMS
PRESIDENT OF RCCL

Date: 5/29/98

JUDSON W. STARR (NAM)
COUNSEL FOR RCCL

Date: 5/29/98

JOSEPH G. BLOCK (NAM)
COUNSEL FOR RCCL

Date: 5/29/98

JOAQUIN MONSERRATE MATIENZO (NAM)
COUNSEL FOR RCCL

Date: 5/29/98

NORMAN MOSCOWITZ (NAM)
COUNSEL FOR RCCL

UNITED STATES DISTRICT COURTS
DISTRICT OF PUERTO RICO
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 96-333 (PG) |
| | ) (D.P.R.) |
| | ) |
| ROYAL CARIBBEAN CRUISES LTD. | ) CASE NO. 98-103-CR-MIDDLEBROOKS |
| | ) (S.D.Fla.) |
| _____Defendant._____ | ) |

FACTUAL BASIS

     This Factual Basis contains a joint statement of the facts that accompany the Plea Agreement signed and dated this same day between the United States and Royal Caribbean Cruises, Ltd. ("RCCL"), also known as Royal Caribbean International, in the above captioned criminal prosecutions.

**A.**     <u>United States v. RCCL</u>, CRIMINAL NO. 96-333 (PG),
       **District of Puerto Rico**

**I.**     **Count 1 (Conspiracy)**

     RCCL and a significant number of employees participated in a conspiracy and committed numerous overt acts in furtherance of the conspiracy. These acts included the regular and routine discharge of oil contaminated bilge waste from RCCL cruise ships in U.S. waters and the regular and routine practice of presenting false Oil Record Books to the U.S. Coast Guard and otherwise deceiving Coast Guard personnel during inspections by representing that the Oil Water Separator was in operable condition and used by RCCL. Specifically, RCCL agrees in pleading guilty to Count 1 that it willfully and knowingly conspired with certain employees from at least August 18, 1990, to October 25, 1994, within the District of Puerto Rico and elsewhere, to:

     (1) discharge harmful quantities of oil contaminated bilge waste into the navigable waters (approximately 3 miles from shore) and the contiguous zone (approximately 12 miles from shore) of the United States from the RCCL fleet of cruise ships including the <u>Sovereign of the Seas</u>, <u>Monarch of the Seas</u>, <u>Song of America</u>, <u>Nordic Prince</u>, and <u>Nordic Empress</u>, in violation of Title 33, United States Code, Sections 1319(c) and 1321(b)(3); and

     (2) make materially false statements to the United States Coast Guard in a matter within the agency's jurisdiction, by presenting false and fictitious Oil Record Books, knowing that the Oil Record Books contained false, fictitious and fraudulent entries (both in the form of <u>omissions</u> that failed to record overboard

- 2 -

discharges of oil contaminated bilge waste made without the use of the Oil Water Separator, a required pollution prevention device, and by commission, i.e., affirmative false statements that falsely represented that overboard discharges of bilge waste contained little or no oil (less than 15 parts per million — the legal limit) and had only been discharged overboard after treatment by the Oil Water Separator, in violation of Title 18, United States Code, Section 1001.

The following are some of the manners and means used, among others, by RCCL and certain employees to effectuate the conspiracy:

First, RCCL discharged oil contaminated bilge waste, including harmful quantities of oil, from RCCL cruise ships by using equipment and procedures that bypassed the Oil Water Separator. RCCL cruise ships were equipped with bypass pipes that circumvented the Oil Water Separator. Bypass pipes were installed by RCCL and crew members were instructed on their use. Additionally, the ship's normal equipment was used improperly in order to discharge the oily bilge waste overboard. For example, RCCL ships used the bilge system in areas of the ship that do not contain oil (the "clean" bilge system) to discharge oil contaminated waste from the oily bilge system. Like all large ships, RCCL cruise ships have a bilge area below the engine equipment which collects water and waste oil from ship equipment and maintenance. This bilge waste, including waste oil, accumulates in the bilge and must be managed so that it does not rise too high, becoming a fire and safety hazard. RCCL cruise ships were legally required to utilize an Oil Water Separator, a pollution prevention device designed to separate oil from water, sending clean bilge water overboard and retaining separated oily water and sludge on board for burning in the ship's incinerator or for proper disposal on shore.

Second, RCCL maintained, used, and presented for inspection by the U.S. Coast Guard, Oil Record Books for RCCL cruise ships which contained material false statements and from which other material information was omitted, for the purpose of concealing from the U.S. Coast Guard the bypassing, improper use, and malfunction of the Oil Water Separator, and the overboard discharge of oil contaminated bilge waste. On certain RCCL cruise ships, the Oil Record Book was known as the "*Eventyrbok*", which in Norwegian means "Fairy Tale" book.

Third, RCCL concealed and covered up the bypassing, improper use, and malfunction of the Oil Water Separator on board RCCL cruise ships from the U.S. Coast Guard during inspections in U.S. ports. RCCL's cruise ships were inspected by the U.S. Coast Guard at least quarterly in the United States. During certain inspections, RCCL failed to disclose that the separator was not used or inoperable. In some instances, bypass pipes were removed just prior to the Coast Guard inspection and false entries were made in the ship's Oil Record Book.

Fourth, RCCL avoided expenses and commitment of other resources associated with regular maintenance of the Oil Water Separators, replacement of membranes and other spare parts, and offloading of oil contaminated bilge waste in port. Membranes for the Oil Water Separator on some RCCL cruise ships, such as the Sovereign of the Seas, cost approximately

- 3 -

$10,000.00 for a single set of membranes (consisting of four membranes). While these membranes were usually changed between 0 and 1 time each year prior to the government's investigation, RCCL now finds it necessary to replace this type of membrane between 5 and 10 times each year per cruise ship using this design. Similarly, where oily bilge waste was offloaded infrequently in port prior to the government's investigation, RCCL now frequently offloads large quantities of bilge waste from some of its cruise ships, including at times more than 100,000 gallons from certain ships each year.

As set forth in the factual basis for Counts 2 and 4, RCCL specifically admits to overt acts in furtherance of the conspiracy including that on October 25, 1994, it deliberately discharged a harmful quantity of oil from the Sovereign of the Seas cruise ship and presented a materially false Oil Record Book to the U.S. Coast Guard on that same day in San Juan, Puerto Rico, during a pollution investigation. Additionally, and as set forth in the factual basis for its guilty plea to the Indictment in the Southern District of Florida, RCCL specifically admits that on February 1, 1993, it deliberately presented a materially false Oil Record Book for the Nordic Empress to the U.S. Coast Guard in Miami, Florida, during a pollution investigation.

## II.   Counts 2-4, 6, 8 and 10

RCCL agrees that in pleading guilty to Count 2-3 it is admitting that on October 25, 1994, within the District of Puerto Rico, it knowingly discharged a harmful quantity of oil into and upon the navigable waters and the waters of the contiguous zone of the United States from the Sovereign of the Seas cruise ship, in violation of Title 33, United States Code, sections 1319(c)(2)(A), 1321(b)(3), and that knowing of the discharge it failed to notify the appropriate agency of the United States, in violation of the Clean Water Act, as amended by the Oil Pollution Act of 1990, Title 33, United States Code, section 1321(b)(5).

At approximately 10:15 a.m. on the morning of October 25, 1994, U.S. Coast Guard personnel flying in a specially-equipped aircraft detected visible oil slicks stretching out behind the cruise ship Sovereign of the Seas as it approached San Juan, Puerto Rico within 3 miles of shore and also at approximately 8 miles off shore. The Coast Guard aircraft, known as "AIREYE," was part of a proactive operation designed to detect and deter intentional acts of pollution in U.S. waters. AIREYE detected the discharges coming from the Sovereign of the Seas using remote sensing equipment including Side Looking Airborne Radar ("SLAR") and Infra-Red/Ultra-Violet (IR/UV) technology. Oil slicks cause wave suppression that can be detected by the SLAR and surface variations in temperature that can be detected by the IR/UV. The Coast Guard AIREYE crew dropped to a lower altitude to take a closer look. With their own eyes, the crew observed an apparent discharge of oil in progress as the ship approached land.

The pilots notified the Coast Guard Marine Safety Office in San Juan, which dispatched a small boat to obtain samples from the oil slick. When the small Coast Guard sampling boat crossed the wake of the Sovereign of the Seas as it was about to enter San Juan harbor, they observed an apparent oil slick emanating from the cruise ship. Samples were taken from the oil

- 4 -

slick left behind the ship approximately eight miles offshore.  The samples were sent to the Coast Guard's Marine Safety Laboratory in Groton, Connecticut, along with samples taken from the Sovereign of the Seas.  Utilizing accepted scientific methodology, the Coast Guard laboratory found a "fingerprint" match between the samples of the oil slick taken from the ocean and a sample taken from the waste oil tank (also known as a "slop tank") on the Sovereign of the Seas.

During the Coast Guard boardings of the Sovereign of the Seas in the port of San Juan, the ship and certain records were examined, including the Oil Record Book, a log required by international and U.S. law, in which all discharges are to be recorded.  In pleading guilty to Count 4, RCCL specifically admits that during the Coast Guard boarding of the Sovereign of the Seas in the port of San Juan on October 25, 1994, it knowingly and willfully presented a materially false writing to the U.S. Coast Guard in a matter within the agency's jurisdiction, by presenting a false and fictitious Oil Record Book for the Sovereign of the Seas knowing that the log contained false and fictitious entries (both in the form of omissions that failed to record overboard discharges of oil contaminated bilge waste without the use of the Oil Water Separator, a required pollution prevention device, and by commission, i.e., affirmative false statements that falsely represented that overboard discharges of bilge waste contained little or no oil and had only been discharged overboard after treatment by the Oil Water Separator), in violation of Title 18, United States Code, Section 1001.

The Sovereign of the Seas Oil Water Separator, a required pollution prevention device designed to separate out oil from oily water mixtures, was also examined.  It was found to be inoperable.  During this inspection, the Coast Guard discovered oil under the Oil Water Separator in the bilge space.  After finding oil leaking from a flange on the overboard discharge line, the Coast Guard inspectors asked the Chief Engineer to open a valve located at another point on the overboard line just before it would pass through the skin of the ship and go overboard.  This valve was located on the same discharge pipe as the leaking flange, only further downstream.  When the overboard discharge pipe was disassembled, black waste oil was found inside.  Only clean water containing bilge waste processed by the Oil Water Separator and containing less than 15 parts per million oil should have been in this section of the overboard discharge pipe.  The oil found by the Coast Guard was actually remnants from the last use of a bypass pipe which circumvented the Oil Water Separator and was used to make overboard discharges of waste oil.

RCCL personnel aboard the Sovereign of the Seas made false statements to the Coast Guard, including providing a false explanation for oil found under the Oil Water Separator.  In particular, senior RCCL officers aboard the cruise ship directed employees to give a false explanation regarding the waste oil found in the overboard discharge pipe and to withhold information regarding equipment and procedures used to bypass the Oil Water Separator to the Coast Guard inspectors.  RCCL also made false statements to the Coast Guard by stating that the Oil Water Separator was working properly and had been used last on October 23, 1994, when RCCL knew this statement to be false.

In pleading guilty to Count 6, RCCL agrees that it knowingly and willfully made a

- 5 -

materially false statement to the U.S. Coast Guard by stating to Coast Guard inspectors conducting a pollution investigation of the Sovereign of the Seas on October 25, 1994, in the port of San Juan, that the Oil Water Separator of the cruise ship was working properly and had been used last on October 23, 1994, when RCCL knew this statement to be false, in violation of 18 U.S.C. Section 1001.  This statement was made to conceal the truth from the Coast Guard. The separator had known operational problems.  The last entry in the Oil Record Book claiming use of the separator to discharge bilge waste processed by the Oil Water Separator and containing less than 15 parts per million oil, like certain other entries in the log, was false.

Concerned about an ongoing pollution threat, the Coast Guard sealed the cruise ship's overboard discharge valve before departing the ship at about 10:15 p.m on October 25th, and issued a deficiency report.  Since the ship was leaving, and as indicated in the deficiency report, the boarding team explained that the ship would need to demonstrate that the Oil Water Separator had been repaired to the Coast Guard.  This was scheduled for October 29th in Miami, Florida, the ship's home port.

Shortly after the Sovereign of the Seas left San Juan, a senior officer aboard the cruise ship ordered the crew to work through the night to dismantle a bypass pipe used to circumvent the Oil Water Separator and to discharge oily bilge waste overboard.  The pipe was cut into small pieces and placed in a dumpster in Miami, Florida, on October 29, 1994.  The bypass pipe was removed and destroyed because crew members of RCCL's cruise ship believed that the Coast Guard had not discovered its true purpose and intended to prevent the Coast Guard from making this discovery when the agency's investigation continued in Miami.  After the bypass pipe had been removed, the cruise ship was boarded on October 29th in the Port of Miami by a Coast Guard Marine Inspector from the Marine Safety Office in Miami and a Special Agent from the Coast Guard Investigations Service.  They were not told about the removal and destruction of the bypass pipe.

In pleading guilty to Count 10, RCCL agrees that it engaged in the crime of obstruction of justice by corruptly persuading certain RCCL employees to alter, destroy, mutilate, and conceal a pipe, which had been used to bypass the Oil Water Separator aboard the Sovereign of the Seas, after U.S. Coast Guard pollution investigators had left the Sovereign of the Seas on October 25, 1994, in San Juan, Puerto Rico, and before the U.S. Coast Guard was scheduled to re-inspect the Sovereign of the Seas on October 29, 1994, in Miami, Florida, with the intent to impair the object's integrity and availability for use in a criminal investigation, in violation of Title 18, United States Code, Section 1512(b)(2)(B).

Senior ship officers aboard the Sovereign of the Seas and members of the crew created a false explanation for how oil could have gotten into the overboard discharge pipe, knowing that the real reason was due to the practice of using the bypass pipe.  Having received a subpoena to testify before the grand jury in Puerto Rico, a member of the crew was instructed by a senior ship officer to repeat this false story and to withhold other information such as the existence and use of the bypass pipe.

- 6 -

In pleading guilty to Count 8, RCCL agrees that in approximately November of 1994, it engaged in the crime of witness tampering by corruptly attempting to persuade a Second Engineer employed on the Sovereign of the Seas to give false testimony before a federal Grand Jury in the District of Puerto Rico which was investigating the discharge of oil from the cruise ship on October 25, 1994, in violation of Title 18, United States Code, Section 1512(b)(1). In particular, the RCCL engineer was directed to give a false explanation regarding the waste oil found in the overboard discharge pipe by a U.S. Coast Guard official conducting a pollution investigation on October 25, 1994, and to withhold information regarding equipment and procedures used to bypass the Oil Water Separator.

**B.    United States v. RCCL, CASE NO. 98-103-CR-MIDDLEBROOKS,
       Southern District of Florida**

**1.    Count 1 (False Statement)**

In pleading guilty to the Indictment in the Southern District of Florida, RCCL agrees that on February 1, 1993, it knowingly and willfully presented a materially false writing to the U.S. Coast Guard in a matter within the agency's jurisdiction, by presenting a false and fictitious Oil Record Book for the Nordic Empress cruise ship knowing that the log contained false and fictitious entries (both in the form of omissions that failed to record overboard discharges of oil contaminated bilge waste made without the use of the Oil Water Separator, a required pollution prevention device, and by commission, i.e., affirmative false statements that falsely representing that overboard discharges of bilge waste contained little or no oil and had only been discharged overboard after treatment by the Oil Water Separator), in violation of Title 18, United States Code, Section 1001. The Nordic Empress was equipped with a bypass pipe used to make overboard discharges of oil contaminated bilge waste at night.

At approximately 3:00 a.m. on February 1, 1993, a Coast Guard aircraft spotted the Nordic Empress in the act of dumping of bilge waste oil beyond the United States territorial sea while en route to Miami, Florida. Using Forward Looking Infra-red Radar ("FLIR"), the Coast Guard pilots observed a large oil slick emanating from the vessel. Although the discharge took place at night, it is clearly visible in a videotape using the FLIR technology. At trial, the United States would introduce into evidence the FLIR video which shows a plume of waste oil being dumped from RCCL's Nordic Empress over at least 7 miles of the ocean surface. The pilots attempted to contact the ship to stop the intentional act of pollution on the internationally accepted radio channel that all ships are required to monitor for bridge-to-bridge communications. RCCL's Nordic Empress did not respond.

When the ship reached Miami, the Coast Guard conducted a document and safety inspection. RCCL employees did not acknowledge that the ship had discharged any oil. During the boarding, RCCL presented the Coast Guard with a copy of the Oil Record Book, a required log in which all transfers of oil, especially all overboard discharges, are to be recorded and each page signed by the ship's Captain. RCCL used the same Oil Record Book during prior and

- 7 -

subsequent quarterly inspections conducted by the U.S. Coast Guard.  The RCCL Oil Record Book for the <u>Nordic Empress</u> contained no entry indicating an overboard discharge of oil on February 1, 1993.

The <u>Nordic Empress</u> like other RCCL cruise ships was equipped with a bypass pipe that was used to discharge oil contaminated bilge waste at night on the orders of a senior ship officer. The Oil Record Book was fabricated in order to deceive the U.S. Coast Guard.  The <u>Nordic Empress</u> Oil Record Book contained false entries and omissions that concealed multiple discharges.  The Oil Record Book was false in at least the following respects: (1) it contained entries dating back to 1990 that falsely represented that, on each listed date, bilge waste had been discharged overboard through an Oil Water Separator, with an oil content of less than 15 parts per million; (2) it failed to record the overboard discharge of oil contaminated bilge waste without the use of the Oil Water Separator; and (3) the false entries created the overall false impressions that the vessel had an operable Oil Water Separator that was being used properly, was properly maintaining the Oil Record Book, and was in overall compliance with United States law.

AGREED TO AND
RESPECTFULLY SUBMITTED,


GUILLERMO GIL
UNITED STATES ATTORNEY
DISTRICT OF PUERTO RICO

Date: _6/2/98_          BY:    _Richard H. Miller /for_
                               JORGE E. VEGA
                               DEPUTY CHIEF, CRIMINAL DIVISION


THOMAS E. SCOTT
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

Date: _6/1/98_          BY:    _Thomas C. Watts-Fitzgerald_
                               THOMAS A. WATTS-FITZGERALD
                               CHIEF, ENVIRONMENTAL CRIMES

- 8 -

LOIS J. SCHIFFER
ASSISTANT ATTORNEY GENERAL
ENVIRONMENT & NATURAL
RESOURCES DIVISION
U.S. DEPARTMENT OF JUSTICE


Date: 6/2/98          BY:

RICHARD A. UDELL
TRIAL ATTORNEY
ENVIRONMENTAL CRIMES SECTION


Date: 6/2/98

MARK J. KAPPELHOFF
TRIAL ATTORNEY
ENVIRONMENTAL CRIMES SECTION


ROYAL CARIBBEAN CRUISES, LTD.


Date: 5/29/98          BY:

JACK WILLIAMS
PRESIDENT OF RCCL


Date: 5/29/98

JUDSON W. STARR
COUNSEL FOR RCCL


Date: 5/29/88

JOSEPH G. BLOCK
COUNSEL FOR RCCL

- 9 -

Date: 5/28/98

JOAQUIN MONSERRATE MATIENZO    (N/M)
COUNSEL FOR RCCL

Date: 5/29/98

NORMAN MOSCOWITZ
COUNSEL FOR RCCL

*RESOLVED, that the Chief Executive Officer, the President and the General Counsel be, and each of them hereby is, authorized, for and on behalf of the Corporation, to enter guilty pleas to the Indictment in the United States District Court for the District of Puerto Rico, U.S. v. Royal Caribbean Cruises, Ltd. et al, Criminal No. 96-333 and the Indictment in the United States District Court for the Southern District of Florida, U.S. v. Royal Caribbean Cruises, Ltd., Case No. 98-0103; and further*

*RESOLVED, that the Chief Executive Officer, the President and the General Counsel be, and each of them hereby is, authorized, for and on behalf of the Corporation, to enter into a Plea Agreement with the United States of America, or appropriate offices thereof, in connection with the Indictments referred to above on such terms and conditions as shall be approved by any of such officers; and further*

*RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, for and on behalf of the Corporation, to take all such actions and to sign all such documents as shall be necessary or desirable to carry out the intent of the foregoing resolutions.*

*RESOLVED, that the Chief Executive Officer, the President and the General Counsel be, and each of them hereby is, authorized, for and on behalf of the Corporation, to enter guilty pleas to the Indictment in the United States District Court for the District of Puerto Rico, U.S. v. Royal Caribbean Cruises, Ltd. et al, Criminal No. 96-333 and the Indictment in the United States District Court for the Southern District of Florida, U.S. v. Royal Caribbean Cruises, Ltd., Case No. 98-0103; and further*

*RESOLVED, that the Chief Executive Officer, the President and the General Counsel be, and each of them hereby is, authorized, for and on behalf of the Corporation, to enter into a Plea Agreement with the United States of America, or appropriate offices thereof, in connection with the Indictments referred to above on such terms and conditions as shall be approved by any of such officers; and further*

*RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, for and on behalf of the Corporation, to take all such actions and to sign all such documents as shall be necessary or desirable to carry out the intent of the foregoing resolutions.*